DART et al. v. SAYLOR ELECTRIC CO.

(District Court, W. D. Pennsylvania. November 10, 1913.)

No. 73.

PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — CONDUIT FOR ELECTRIC WIRES.

    The Speer patent, No. 693,916, for a conduit for electric wires which is waterproof, fireproof, and flexible, in view of the prior art which disclosed conduits having all such qualities, must be narrowly construed, and as so limited is not infringed by the device of the Saylor patent, No. 1,049,771.

In Equity. Suit by Russel Dart and others against the Saylor Electric Company. On final hearing. Decree for defendant.

Christy & Christy, of Pittsburgh, Pa., for complainants.
C. M. Clarke, of Pittsburgh, Pa., for defendant.

ORR, District Judge. This patent suit is before the court upon final hearing. The proofs were compiled before the adoption of the new equity rules by the Supreme Court. The plaintiffs are the owners of letters patent of the United States, No. 693,916, issued to E. D. and H. N. Speer on February 25, 1902, for "conduit for electric wires." They charge the defendant with infringement of said letters patent. The defendant denies the validity of the patent by reason of a want of novelty or invention and denies infringement.

There have been many patents issued for tubes or conduits for electric wires. The earlier forms of apparatus seem to have possessed no flexibility. Therefore the tube in the wall and the tube in the ceiling of a building had to be connected by a joint of some kind. At the joint the electrical conductor would not be so well insulated and protected from flame and moisture as in the tube. Flexibility was subsequently procured by the use of a spiral or helix in the construction of conduits. This, perhaps, is first disclosed in United States patent to Herrick, No. 456,271, dated July 21, 1891. Herrick accomplished what he stated to be his object; that is, he provided a conduit "which shall be flexible to such an extent that it shall be capable of being bent without injury to the desired angle or curve where it becomes necessary that a change should occur in the direction followed by the conductor, whereby the cutting and joining of the conduit required in the case of the conduits generally in use shall be obviated." In the patent in suit the object of the invention is stated to be as follows (italics by the court):

"In order to be practicable, safe, and durable, the duct must be so constructed that it shall be *waterproof* to prevent deterioration from moisture; that it shall be *fireproof* to prevent ignition by a possible electric spark; and that it shall be *flexible*, so that it can be readily carried around the corners and bends which are frequently found in buildings without breaking or buckling."

Inasmuch as "waterproof," "fireproof," and "flexible" conduits are disclosed in prior patents, the novelty of the invention must be found, if at all, in the construction of the conduit as described in the patent.

The claims in issue are:

"(2) A duct for electric wires having an inner tube composed of a longitudinally arranged sheet of flexible fireproof material, a waterproof coating on said tube, a layer of fireproof cord on said tube, a fireproof cover outside of the cord, and a waterproof coating on said cover, substantially as described."

"(6) In a duct for electric wires, the combination of an inner flexible longitudinally arranged fireproof sheet forming a tube, a layer of cord around outside said tube, and a cover on the cord, substantially as described."

The elements of claim 2 are: (1) An inner tube (composed of a fireproof, flexible, longitudinally arranged sheet of material); (2) a waterproof coating thereon; (3) a spirally wound fireproof cord outside of said tube; (4) a fireproof cover outside of said cord; and (5) a waterproof coating on said cover.

The elements of claim 6 are: (1) An inner flexible longitudinally arranged fireproof sheet forming a tube; (2) a layer of cord around outside of said tube; and (3) a cover on the cord.

A careful reading of the patent in the light of the prior art leads to the conclusion that none of said elements are new except the "cord." The inventor in his specifications gives his definition of that in the following language:

"By 'cord,' we intend either 'cord' properly so called, twine, yarn, marline, wire, or generally any filamentary body which is capable of being wound around or laid along the inner tube and around the same, and we intend that the term 'cord' in the specification and claims shall include all such filamentary bodies, whether of combustible or incombustible material, as wire or asbestos twine."

It cannot be that such definition can be extended to include tape or strips of fabric or duck or other fibrous material. The waterproofing compositions and the coverings are to be of "suitable" materials and quality, thus indicating, as prior patents disclose, that they were lacking in novelty. It has been specially urged that the use of the inner tube, as required by the patent, was novel and of great utility. With respect to it the patent states:

"The inner tube 1 is formed in any suitable manner, as, for example, on a mandrel, and of any suitable material, as paper or muslin or other like material; the meeting edges 2 3 making a lapped joint and being cemented together. Before forming the tube 1 the material is thoroughly saturated with a fireproofing solution, which is preferably composed of two ounces avoirdupois of phosphate of ammonia in a quart of water."

That is disclosed by United States patent to Kinney, No. 557,830, dated April 7, 1896.

There is great utility in having the inner surface of the conduit smooth and unbroken, because the insertion of the electric wire is thus facilitated. This is not disclosed by the patent in suit, and apparently was not recognized by the inventor. It had been disclosed by United States patent to Johns, No. 465,564, of December 22, 1891. Indeed, in the patent in suit the inventor states that under certain conditions it is well to cause the inner tube to be "perforated with holes 14, preferably staggered, as shown, to increase the flexibility of the duct."

There appears to be nothing novel in the combination or in the method of construction of the Speer conduit except the "cord." A

conclusion must be reached that the patent is one of narrow limitation, and that, unless all the elements of the claims in issue are found in the defendant's structure, infringement cannot be found.

The defendant is manufacturing flexible conduits under letters patent, No. 1,049,771, dated January 7, 1913, issued to Frank D. Saylor upon an application filed by him prior to the bringing of this action. Without detailing the characteristics of defendant's product, it is clear that the "cord" of the patent in suit is not the "strip" or "ribbon" of the Saylor patent. The purpose of each is to form the spiral which gives flexibility, but they are not any more like each other than they are like the spiral in the patent to Herrick above mentioned. Because of that patent they cannot be within the doctrine of equivalents. Infringement is not found.

The bill must be dismissed at plaintiffs' costs. Let a decree be drawn.